IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER LAWRENCE MANEY, )
)
    Plaintiff, )
)
v. ) 1:12CV800
)
CHIEF JAMES FEALY, individually and in )
his official capacity, OFFICER TERENCE )
GARRISON, individually and in his official )
capacity, THE CITY OF HIGH POINT, )
)
    Defendants. )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss [Doc. #8] filed by Defendant Chief James Fealy ("Chief Fealy"), Defendant Officer Terence Garrison ("Officer Garrison"), and Defendant the City of High Point ("the City") (collectively, "Defendants"). For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss [Doc. #8].

I.     FACTUAL BACKGROUND

The factual allegations of Plaintiff Christopher Lawrence Maney's ("Plaintiff") Complaint, taken as true for the purposes of Defendants' Motion to Dismiss, allege that on May 4, 2010, at approximately 10:09 p.m., the High Point Police Department received notice of an alleged assault and robbery at a Sonic Restaurant. (Compl. ¶ 15). The High Point Police Department responded to the notice and received a description of a suspect. (Compl. ¶ 17). After receiving this description, the High Point Police Department dispatched multiple officers, including Officer Garrison and his K-9 police dog, to search for the suspect. (Compl. ¶ 18).

The search for the suspect moved towards "the camp," which is recognized as "an area where homeless people and persons who are temporarily displaced often set up tents and other structures to live in." (Compl. ¶ 20). On the night of the search, Plaintiff was living and resting in a tent he had erected in "the camp." (Compl. ¶ 23). When Plaintiff heard officers approaching "the camp," he fled towards an abandoned residence and crouched down next to the stairs leading up to the front porch of the residence. (Compl. ¶ 24).

From this location, Plaintiff saw police officers approaching, including Officer Garrison and his K-9 police dog, who Plaintiff alleges was on a fifteen-foot leash held by Officer Garrison. (Compl. ¶¶ 28-30). At this time, Plaintiff did not stand up and identify himself out of fear that the dog or officers would attack him. (Compl. ¶ 32). Instead, Plaintiff remained crouched in his location next to the stairs. (Compl. ¶ 32). Plaintiff alleges that Officer Garrison's police dog then climbed the front steps of the abandoned residence where Plaintiff was hiding. (Compl. ¶ 33). However, Plaintiff alleges that no warning was given by Officer Garrison or any other officer of the dog's presence, even though "the officers could see where [Plaintiff] was crouching, as he was located under two street lights and the bushes nearby did not conceal him." (Compl. ¶ 33).

Plaintiff next alleges that despite the officers' ability to see Plaintiff, suddenly, and without warning, Officer Garrison's police dog bit the top of Plaintiff's head. (Compl. ¶ 34). After this initial bite, Plaintiff alleges that Officer Garrison made no attempts to command the dog to stop his attack or to pull the dog back "despite the fact that the dog was on less than a three foot lead" at that time. (Compl. ¶ 35). Following this initial bite, the dog lunged at

2

Plaintiff again, biting Plaintiff on the left arm and then biting Plaintiff on the left thigh area. (Compl. ¶ 38). The entire attack lasted approximately ten seconds, and after the third bite, the police dog ceased its attack and sat down in front of Plaintiff. (Compl. ¶¶ 39-40). Plaintiff alleges that during the entire attack, the dog was connected by leash to Officer Garrison. (Compl. ¶ 41).

Based on the foregoing facts, Plaintiff filed this action against Defendants alleging claims pursuant to 42 U.S.C. § 1983 for excessive force against Officer Garrison and alleging related 42 U.S.C. § 1983 claims against the City and Chief Fealy. Plaintiff's Complaint also alleges state law claims against all Defendants for battery and against the City and Chief Fealy for negligent training and supervision. Additionally, Plaintiff's Complaint alleges alternative claims against all Defendants under Article I, Section 18 and 19 of the North Carolina Constitution.

In response to Plaintiff's Complaint, Defendants filed the pending Motion to Dismiss [Doc. #8]. Defendants' Motion to Dismiss seeks dismissal of Plaintiff's 42 U.S.C. § 1983 claims against the City, Plaintiff's state law claim for negligent training and supervision against Chief Fealy in his individual capacity, and Plaintiff's alternative claims against all Defendants under the North Carolina Constitution pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Additionally, Defendants' Motion to Dismiss seeks dismissal of Plaintiff's state law claims for battery and negligent training and supervision against the City and against Chief Fealy and Officer Garrison in their official capacities pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on

governmental immunity.[1]

II. LEGAL STANDARDS

    A. **Motion to Dismiss Claims Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Defendants' Motion to Dismiss seeks dismissal of Plaintiff's 42 U.S.C. § 1983 claims against the City, Plaintiff's state law claim for negligent training and supervision against Chief Fealy in his individual capacity, and Plaintiff's alternative claims against all Defendants under the North Carolina Constitution pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "'take the facts in the light most favorable to the [non-moving party],' but '[it] need not accept the legal conclusions drawn from the facts,' and '[it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). In this regard, the Iqbal Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing

---

[1]The Court notes that Defendants' Motion to Dismiss does not seek dismissal of Plaintiff's 42 U.S.C. § 1983 claims against Officer Garrison in his individual capacity or Plaintiff's battery claims against Officer Garrison in his individual capacity.

more than conclusions." Id. at 677-78, 678-79, 129 S. Ct. at 1949, 1950. Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 683, 129 S. Ct. at 1952 (internal quotation omitted)).

      **B.    Motion to Dismiss Claims Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure**

Defendants' Motion to Dismiss seeks dismissal of Plaintiff's state law claims for battery and negligent training and supervision against the City and against Chief Fealy and Officer Garrison in their official capacities pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on governmental immunity. In reviewing a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) based on governmental immunity, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings . . . to show that a genuine issue of material fact exists." Richmond, Frederickburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991). In that regard, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. The party moving for dismissal pursuant to Rule 12(b)(1) "will only prevail if the material jurisdictional facts are not disputed and the moving party is entitled to prevail as a matter of law." Phillips v. N. Carolina A & T State Univ., 1:09CV227, 2009 WL 5215377, at *1 (M.D.N.C. Dec. 28, 2009).

5

III.   DEFENDANTS' MOTION TO DISMISS

   A.   **Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim Against the City**

Defendants move to dismiss Plaintiff's 42 U.S.C. § 1983 claim against the City pursuant to Rule 12(b)(6). "Section 1983 provides a cause of action for constitutional deprivations arising from actions taken under color of state law." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). However, "no municipality can be held liable under §1983 on a *respondeat superior* theory." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (internal quotations omitted). Instead, to state a § 1983 claim against the City, Plaintiff "must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford, 556 F. Supp. 2d at 530. Generally, "municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Id. (citing Carter, 164 F.3d at 218) (internal citations omitted). Further, "[o]utside of such formal decisionmaking channels, a municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Carter, 164 F.3d at 218 (internal quotations omitted).

In the pending Motion to Dismiss, Defendants contend that Plaintiff's Complaint "does not contain sufficient factual allegations to support the allegation that formal decision-making channels at the High Point Police Department maintained a policy or supported a custom of

6

excessive force." (Mem. In Support of Motion to Dismiss [Doc. #9], at 5). Additionally, Defendants contend that Plaintiff "has not alleged sufficient facts to support his allegation of the existence of a widespread custom of excessive force." (Mem. In Support of Motion to Dismiss [Doc. #9], at 7). Based on these contentions, Defendants seek dismissal of Plaintiff's 42 U.S.C. § 1983 claim against the City.

However, Plaintiff contends that his Complaint contains sufficient factual allegations of either a written policy, a policy established by a longstanding custom and practice, or a policy established through negligent training and supervision. (Compl. ¶¶ 64-65). Specifically, Plaintiff alleges in his Complaint that the actions of Chief Fealy and the City included "maintaining a written policy regarding the selection, deployment, training and handling of a police K-9 unit and regarding excessive force in general," or, in the alternative, included "maintaining a longstanding custom or practice of similar Constitutional violations." (Compl. ¶¶ 64-65). Further, Plaintiff alleges that the actions of Chief Fealy and the City "in failing to properly train, supervise and manage [Officer] Garrison constituted the acts of final policy makers" and evidence a "deliberate indifference to the rights and safety of the plaintiff." (Compl. ¶¶ 66-67). Plaintiff's allegations assert that these policies and practices were the "moving force" behind Officer Garrison's alleged use of excessive force in violation of Plaintiff's constitutional rights. (Compl. ¶¶ 64-68).

With regard to a written or formal policy, Plaintiff's Complaint alleges that the actions of Chief Fealy and the City included "maintaining a written policy regarding the selection, deployment, training and handling of a police K-9 unit and regarding excessive force in general," and that such policy was the "moving force" behind Officer Garrison's conduct. (Compl. ¶ 64).

However, Plaintiff provides no factual allegations to support the existence of a written or formal policy beyond the conclusory allegation that such a policy itself exists. Further, Plaintiff provides no factual allegations connecting any alleged written or formal policy to the actions of Officer Garrison beyond the conclusory allegation that the alleged policy was the "moving force" behind such injuries. Thus, Plaintiff's Complaint consists of wholly legal conclusions regarding a written or formal policy. In that regard, Plaintiff's Complaint is "devoid of factual allegations from which the Court could reasonably infer the existence of the alleged [written or formal policy]." See Purcell v. City of Greensboro, No. 1:11CV577, 2012 WL 1718763, at *4 (M.D.N.C. May 14, 2012).

Further, with regard to establishing a policy by a longstanding custom or practice, "[f]acts relating to the incident surrounding [a] [p]laintiff's injury, standing alone, do not suffice to establish the existence of a policy or custom by which [a City] encouraged its officers to use excessive force." Id. at *4. Indeed, "[a] custom or usage cannot be established by proof of a single constitutional violation." Gaddy v. Yelton, No. 1:10CV214, 2011 WL 3608023, at *5 (W.D.N.C. Aug. 16, 2011). Here, Plaintiff has provided no facts to support his allegations of a widespread custom of excessive force beyond the facts surrounding his own incident with Officer Garrison. In that regard, Plaintiff has not alleged any "other specific instances of police misconduct which would suggest that the incident here alleged was anything but a singular act by an individual officer." Purcell, 2012 WL 1718763, at *4. Because "proof of a single violation . . . cannot support an inference that the violation resulted from a municipally condoned custom

8

of comparable practices," Plaintiff's Complaint is devoid of factual allegations from which the Court could reasonably infer the existence of a longstanding custom of excessive force. Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987).

Finally, with regard to Plaintiff's allegations that the City and Chief Fealy "fail[ed] to properly train, supervise and manage [Officer] Garrison" and such failure "constituted the acts of final policy makers which were the moving force" behind Officer Garrison's conduct, Plaintiff's Complaint is again devoid of sufficient facts to support this allegation. (Compl. ¶ 66). While a municipality's training of its police force is a matter of policy, "[i]n order for a municipality to be liable pursuant to § 1983 under a theory of deficient training . . . [the alleged training deficiencies] must rise to at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction." Semple v. City of Moundsville, 195 F.3d 708, 713 (4th Cir. 1999). "[A]n allegation of general ineffectiveness [will not be] sufficient" to state a § 1983 claim against a municipality. Gaddy, 2011 WL 3608023, at *7. Instead, "[t]he plaintiff must identify a *specific* deficiency in the officers' training." Id. at *7 (emphasis in original).

Here, in the context of Plaintiff's § 1983 claim, Plaintiff's Complaint alleges that the City and Chief Fealy "fail[ed] to properly train, supervise and manage [Officer] Garrison." (Compl. ¶ 66). In the context of Plaintiff's state law claim for negligent supervision and training, Plaintiff's Complaint alleges that the City and Chief Fealy "[f]ail[ed] to properly train their officers in the proper use of force, and proper use and handling of a K-9 unit" and "[f]ail[ed]

9

to properly supervise Defendant Garrison and/or employees in their use of force against an individual and their use of a K-9 unit." (Compl. ¶ 76). However, such conclusory allegations do not amount to "factual allegations of a *specific* deficiency" necessary to state a § 1983 claim against the City. Id. at *7. Instead, Plaintiff's allegations that the City and Chief Fealy failed to properly train, supervise, and manage Officer Garrison amount to "allegation[s] of general ineffectiveness" unsupported by factual allegations and insufficient to state a § 1983 claim against the City. See id. at *7.

Because Plaintiff's Complaint is devoid of factual allegations from which the Court could reasonably infer the existence of a written policy, a policy established by custom, or a policy established by negligent training and supervision, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against the City.[2] See Miller v. Hamm, Civ. No. CCB-10-243, 2011 WL 9185, at *14 (D. Md. Jan. 3, 2011) (dismissing a plaintiff's § 1983 claim against defendants in their official capacity where the plaintiff "purport[ed] to identify several policies, customs, and practices engaged in by the [] defendants that causally contributed to his constitutional violations, [but] these allegations amount[ed] to no more than conclusory statements that are not sufficient to establish

---

[2]To the extent Plaintiff contends that Defendants' Motion to Dismiss should be denied because Defendants have access to the relevant information regarding a policy and discovery may provide factual evidence of such a policy, this contention is purely speculative and is not sufficient to overcome the factual deficiencies in Plaintiff's Complaint. See Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 410 (M.D.N.C. 2011) (dismissing a § 1983 claim against a municipality despite the plaintiff's argument that allowing discovery may produce evidence of a policy, finding this argument to be "purely speculative" and "not supported by factual allegations in the [Complaint]").

a plausible claim for relief"). Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim against the City.[3]

### B. Motion to Dismiss Plaintiff's State Law Claims Against the City and Chief Fealy and Officer Garrison in their Official Capacities

Defendants move to dismiss Plaintiff's state law claims for battery and negligent training and supervision against the City and against Chief Fealy and Officer Garrison in their official capacities pursuant to Rule 12(b)(1) based on the doctrine of governmental immunity. In North Carolina, "[s]overeign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits." Phillips v. Gray, 163 N.C. App. 52, 55, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004). "The rule of sovereign immunity applies when the governmental entity is being sued for the performance of a governmental, rather than proprietary, function." Id. at 55-56, 592 S.E.2d at 232 (internal quotations omitted).

Plaintiff's underlying state law claims for battery and negligent training and supervision against the City and against Chief Fealy and Officer Garrison in their official capacities are based on an interaction between Plaintiff and Officer Garrison while Officer Garrison was performing

---

[3]The Court notes that while Defendants' Motion to Dismiss only specifically seeks dismissal of Plaintiff's 42 U.S.C. § 1983 claim against the City, to the extent Plaintiff's Complaint asserts a 42 U.S.C. § 1983 claim against Chief Fealy and Officer Garrison in their official capacities, such claims must also be dismissed, as "[s]uing a governmental employee in his 'official' capacity is simply another way of pleading an action against the governmental entity." Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 399 (M.D.N.C. 2004).

11

his duties as a High Point Police Officer. "Ordinarily, a municipality providing police services is engaged in a governmental function for which there is no liability." Greene v. Barrick, 198 N.C. App. 647, 651, 680 S.E.2d 727, 730 (N.C. Ct. App. 2009). If, at the time of the alleged action, a municipality's officer or employee is performing a governmental function, immunity extends to "[the] municipality and its officer and employees sued in their official capacity." Jones v. Kearns, 120 N.C. App. 301, 304, 462 S.E.2d 245, 247 (N.C. Ct. App. 1995). "[This] immunity is absolute unless the [municipality] has consented to being sued or otherwise waived its right to immunity." Greene, 198 N.C. App. at 651, 680 S.E.2d at 730.

Here, Defendant contends that no such wavier of immunity has occurred, and this contention is supported by the Affidavit of Everette Arnold, the Executive Director of the Guilford City/County Insurance Advisory Committee.[4] (See Affidavit of Everette Arnold [Doc. #10]). In Plaintiff's Response Brief, Plaintiff concedes that the relevant insurance policy does not provide for such waiver. (See Pl.'s Response Br. [Doc. #17], at 6) ("The municipal Defendants have alleged that their policy of insurance specifically exempts claims that would waive sovereign immunity . . . [t]his is true."). In that regard, Defendants have properly asserted that Plaintiff's state law claims against the City and against Chief Fealy and Officer Garrison in

---

[4]The Court notes that it can properly consider an Affidavit in the context of a Motion to Dismiss pursuant to Rule 12(b)(1) without converting the proceeding into one for summary judgment. See Velasco v. Government of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004) ("Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

12

their official capacities are barred by the doctrine of governmental immunity, and Plaintiff concedes that this doctrine of immunity compels dismissal of such claims. Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's state law claims for battery and negligent training and supervision against the City and against Chief Fealy and Officer Garrison in their official capacities.

### C. Motion to Dismiss Plaintiff's State Law Claim for Negligent Training and Supervision Against Chief Fealy in his Individual Capacity

Defendants move to dismiss Plaintiff's state law claim for negligent training and supervision against Chief Fealy in his individual capacity pursuant to Rule 12(b)(6) on the basis of public official immunity.[5]  Under North Carolina law, "a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Jones v. Kearns, 120 N.C. App. 301, 305, 462 S.E.2d 245, 247 (N.C. Ct. App. 1995).  Thus, public official immunity will attach so long as a "'public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" Thompson v. Town of Dallas, 142 N.C. App. 651, 655, 543 S.E.2d 901, 904 (N.C. Ct. App. 2001)(quoting

---

[5]The Court recognizes that "public official immunity is not a defense to intentional torts." Mandsanger v. Univ. of N. Carolina at Greensboro, 269 F. Supp. 2d 662, 681 (M.D.N.C. 2003).  In that regard, public official immunity would not be a defense to Plaintiff's state law battery claim, as battery is an intentional tort. See Lynn v. Burnette, 138 N.C. App. 435, 531 S.E.2d 275 (N.C. Ct. App. 2000).  However, because the state law tort of negligent training and supervision is not an intentional tort, a public immunity defense can properly be considered as to this claim.

13

Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)).

However, public officials are subject to individual liability for malicious or corrupt conduct that goes beyond the scope of their duties. Thompson, 142 N.C. App. at 655, 543 S.E.2d at 904. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Gadd v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (N.C. 1984) (internal quotations omitted). Further, "[a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. at 313, 321 S.E.2d at 890-91 (internal quotations omitted).

Here, Plaintiff alleges in his Complaint that Chief Fealy "failed to exercise . . . reasonable care in the supervision and training of [his] employees" by "[f]ailing to properly train [his] officers in the proper use of force, and proper use and handling of a K-9 unit" and by "[f]ailing to properly supervise Defendant Garrison and/or employees in their use of force against an individual and their use of a K-9 unit." (Compl. ¶ 76). Plaintiff further alleges that these "failures to properly train and supervise [Officer] Garrison were taken with malice and showed a reckless indifference to the rights and safety of the Plaintiff." (Compl. ¶ 77). However, Defendant argues that these allegations are conclusory and are not supported by sufficient facts to sustain individual personal liability against Chief Fealy.

As a threshold matter, the Court must first address Plaintiff's argument that the North Carolina pleading requirements should be applied to Plaintiff's state law claim against Officer

14

Fealy in his individual capacity for negligent training and supervision.  Although the Court applies North Carolina substantive law to Plaintiff's state law claims, "pleading standards are a matter of procedural law governed in this Court by federal, not state, law." McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 920 (M.D.N.C.2011) (citing Jackson v. Mecklenburg Cnty., No. 3:07–cv–218, 2008 WL 2982468, at *2 (W.D.N.C. July 30, 2008)), *rev'd in part on other grounds,* 703 F.3d 636 (4th Cir.2012).  In that regard, in order to satisfy the applicable federal pleading standard, Plaintiff's Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting Bell Atl. Corp., 550 U.S. at 570, 127 S. Ct. at 1974).

With this pleading standard in mind, the Court will consider whether Plaintiff's Complaint contains sufficient factual matter to support his allegation that Chief Fealy acted with malice.  It is well recognized that a "conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss [based on public official immunity]." Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 823 (M.D.N.C. 2011).  Instead, "[t]he facts alleged in the complaint must support such a conclusion." Id.  To support his allegation of malice, Plaintiff alleges that Chief Fealy "[f]ail[ed] to properly train [his] officers in the proper use of force, and proper use and handling of a K-9 unit" and "[f]ailed to properly supervise Defendant Garrison and/or employees in their use of force against an individual and their use of a K-9 unit." (Compl. ¶¶ 76-77).  However, these allegations do not contain any facts to support an inference that Chief Fealy acted maliciously

15

in his training and supervision of Officer Garrison. Instead, the allegations amount to "legal conclusions and bare assertions" that are "insufficient to state a claim against [Chief Fealy in his individual capacity]." See Carland v. Jordan No. 1:12CV82, 2012 WL 3262939, at *2 (W.D.N.C. Aug. 8, 2012). As such, Plaintiff has not pled sufficient facts to support an inference that Chief Fealy acted with malice in his training and supervision of Officer Garrison. Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's state law negligent training and supervision claim against Chief Fealy in his individual capacity.

### D. Motion to Dismiss Plaintiff's Claims Against All Defendants Under the North Carolina Constitution

Defendants move to dismiss Plaintiff's alternative claims under Section 18[6] and 19[7] of the North Carolina Constitution against all Defendants.[8] Under North Carolina law, "a plaintiff may bring a direct claim under the state constitution only if no other adequate state law remedy

---

[6] Article 1, Section 18 of the North Carolina Constitution provides that "[a]ll courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18.

[7] Article 1, Section 19 of the North Carolina Constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin." N.C. Const. art. I, § 19.

[8] "[C]laims under the North Carolina Constitution may not be brought against individuals" and "may only be brought against defendants in their official capacities." King v. Jefferies, 402 F. Supp. 2d 624, 634 (M.D.N.C. 2005). Accordingly, the Court will construe Plaintiff's Complaint as asserting claims under the North Carolina Constitution against the City and against Chief Fealy and Officer Garrison in their official capacities.

16

exists." Googerdy v. N. Carolina Agr. & Technical State Univ., 386 F. Supp. 2d 618, 629 (M.D.N.C. 2005) (citing Corum v. University of N. Carolina, 330 N.C. 671, 782, 413 S.E.2d 276, 289 (1992)). For an adequate state law remedy to exist, the remedy "must provide the possibility of relief under the circumstances." Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009). In that regard, "[a]n adequate state [law] remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the *same injury* alleged in the direct constitutional claim." Estate of Fennell v. Stephenson, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915–16 (N.C. Ct. App. 2000), *rev'd in part on other grounds,* 354 N.C. 327, 554 S.E.2d 629 (2001)(emphasis in original). Thus, "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Craig ex rel. Craig, 363 N.C. at 339–40, 678 S.E.2d at 355.

Here, Plaintiff contends that if the Court accepts Chief Fealy's public immunity defense against Plaintiff's state law claim of negligent training and supervision, "Plaintiff would be without any opportunity to seek redress for [Chief Fealy's] violations of the North Carolina Constitution." (Pl.'s Response Br. [Doc. #17], at 16). In that regard, Plaintiff claims he "has a direct right of action under the State Constitution" against Chief Fealy. (Pl.'s Response Br. [Doc. #17], at 16). However, Defendants contend that Plaintiff's alternative claims under the North Carolina Constitution must be dismissed because Plaintiff has an adequate state law remedy against Officer Garrison through Plaintiff's state law battery claim, which Officer

17

Garrison has not moved to dismiss at this stage. (Mem. In Support of Motion to Dismiss [Doc. #9], at 16).

As noted above, an adequate state law remedy exists if "the remedy would compensate the plaintiff for the *same injury* alleged in the direct constitutional claim." Estate of Fennell, 137 N.C. App. at 437, 528 S.E.2d at 916. Plaintiff's Complaint alleges that Chief Fealy's actions were the "legal and proximate cause of the injuries sustained by Plaintiff" during Plaintiff's interaction with Officer Garrison and the K-9 police dog. (Compl. ¶ 77). These same injuries are the subject of Plaintiff's battery claim against Officer Garrison. While Plaintiff argues that his battery claim does not provide an adequate state law remedy against Chief Fealy because Chief Fealy and Officer Garrison violated Plaintiff's rights under the North Carolina Constitution "in different ways," this contention is not supported by the case law. (Pl.'s Response Br. [Doc. #17], at 19). Instead, courts have found adequate state law remedies to exist where a state law claim against an officer in his individual capacity remains even after the dismissal of official capacity claims against another defendant. See Johnson v. Causey, No. COA09-1712, 701 S.E.2d 404, 2010 WL 4288511, at *10 (N.C. Ct. App. Nov. 10, 2010) (unpublished table opinion) (finding an adequate state law remedy existed when claims were dismissed against a sheriff but claims against a former deputy sheriff in his individual capacity remained pending); Glenn-Robinson v. Acker, 140 N.C. App. 606, 632, 538 S.E.2d at 620 (N.C. Ct. App. 2000) (finding an adequate state law remedy existed when claims against the City of Durham were dismissed but state law claims against the defendant officer in his individual capacity remained).

18

Here, Plaintiff has not been barred from "enter[ing] the courthouse doors and present[ing] his claim[s]" for injuries sustained during his interaction with Officer Garrison and the K-9 police dog. See Craig ex rel. Craig, 363 N.C. at 339–40, 678 S.E.2d at 355. In contrast, Plaintiff has the opportunity, through his state law battery claim against Officer Garrison, to seek compensation for such injuries. In that regard, Plaintiff has an adequate state law remedy, as a successful battery claim against Officer Garrison would compensate Plaintiff for the injuries asserted in his alleged constitutional claims against Chief Fealy. As such, the Court will grant Defendants' Motion to Dismiss Plaintiff's alternative claims under the North Carolina Constitution.

IV. CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss [Doc. #8] is GRANTED, and Plaintiff's 42 U.S.C. § 1983 claims against the City of High Point and against Chief James Fealy and Officer Terence Garrison in their official capacities, Plaintiff's state law battery and negligent training and supervision claims against the City of High Point and against Chief James Fealy and Officer Terence Garrison in their official capacities, Plaintiff's state law negligent training and supervision claim against Chief James Fealy in his individual capacity, and Plaintiff's alternative claims under the North Carolina Constitution are hereby DISMISSED.

This, the 18th day of July, 2013.

/s/ James A. Beaty
United States District Judge