IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER LAWRENCE MANEY,       )
                                  )
                                  )
            Plaintiff,             )
                                  )
    v.                            )       1:12CV800
                                  )
CHIEF JAMES FEALY, individually and in  )
his official capacity, OFFICER TERENCE  )
GARRISON, individually and in his official  )
capacity, THE CITY OF HIGH POINT,  )
                                  )
                                  )
            Defendants.            )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion for Summary Judgment [Doc. #28] filed by Defendant Officer Terence Garrison ("Officer Garrison").[1] The Motion is fully briefed and is now before the Court for review. For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2010, at approximately 10:09 p.m. the High Point Police Department received notice of an alleged assault and robbery at a Sonic Restaurant. The High Point Police Department responded to the notice and received a description of a suspect. Witnesses

---

[1] All other named Defendants in this action were dismissed pursuant to this Court's Memorandum Opinion and Order issued on July 18, 2013, in which the Court granted Defendants' Motion to Dismiss. The Motion to Dismiss sought dismissal of all claims and parties, other than Plaintiff's 42 U.S.C. § 1983 claims against Officer Garrison in his individual capacity and Plaintiff's battery claims against Officer Garrison in his individual capacity.

described the suspect as "a clean shaven black male, approximately thirty to forty years of age, bald head, approximately five foot ten inches, medium build." (Incident Report [Doc. #29-1], at 4.) After receiving the description, the High Point Police Department dispatched multiple officers, including Officer Garrison and his K-9 police dog to search for the suspect.

The search led the officers and the K-9 through a homeless camp in a wooded area where Plaintiff had been residing. When the officers started to approach the campsite, Plaintiff fled. Plaintiff fled to an abandoned house, where he hid behind bushes next to the stairs leading up to the front porch of the house. The K-9 led officers to the abandoned house and up the stairs to the front porch. At that time, Officer Garrison had the K-9 on a three foot lead. Whereas, prior to arriving at the abandoned house, Officer Garrison had the K-9 on a 15 foot lead.

Upon arriving at the abandoned house, the officers did not announce their presence or the presence of the K-9. Officer Garrison, however, stated that while the officers did not see Plaintiff, he believed that the suspect was hiding under the house. Plaintiff stated that once the officers were closer to the house, he could see that they were police officers, but he also did not announce his own presence because he feared the dog and the officers would attack him if he identified himself.

Suddenly, while the officers and the K-9 were on the porch, the K-9 attacked Plaintiff. Plaintiff asserts that the K-9 attacked him from the stairs leading up to the porch. Officer Garrison, however, states that the K-9 jumped from the stairs into the bush where Plaintiff was hiding. During this initial attack, the K-9 tore a two square inch section of underlying hair, skin,

2

and tissue from Plaintiff's head. Officer Garrison realized at that time that Plaintiff did not match the description of the robbery and assault suspect. Plaintiff was a five foot five inch, white male, whereas, the suspect was described as a five foot ten inch, black male. Officer Garrison, however, still instructed Plaintiff to show his hands prior to pulling the K-9 off of Plaintiff. During the time between the initial attack and Plaintiff complying with Officer Garrison's instruction to show his hands, the K-9 bit Plaintiff's left arm and also bit Plaintiff's left thigh area. Plaintiff asserts that the bite to his left arm resulted in several deep puncture wounds and led to a brachial artery blood clot. As to the bite to Plaintiff's left thigh area, Plaintiff asserts that such bite caused deep puncture wounds that caused profuse bleeding, bruising, and swelling. The K-9's entire attack, including the initial bite, lasted for approximately 10 seconds.

On July 31, 2012, Plaintiff filed a Complaint based on the above-described facts. In his Complaint, Plaintiff named Chief James Fealy ("Chief Fealy") individually and in his official capacity as the Chief of the City of High Point Police Department, Officer Garrison individually and in his official capacity, and the City of High Point ("the City") as Defendants. Based on the attack, Plaintiff alleged an excessive force claim against Officer Garrison and the City pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint also alleged state law claims based on the K-9's attack against all Defendants for battery and against the City and Chief Fealy for negligent training and supervision. Additionally, Plaintiff's Complaint alleged alternative claims against all Defendants under Article I, Section 18 and 19 of the North Carolina Constitution. Defendants, in response, filed a Motion to Dismiss all claims other than Plaintiff's 42 U.S.C. § 1983 claim against Officer

3

Garrison in his individual capacity and Plaintiff's battery claim against Officer Garrison in his individual capacity. The Court granted Defendants' Motion to Dismiss, and as a result, Officer Garrison is the only remaining Defendant in this action and Plaintiff's § 1983 claim and battery claim against Officer Garrison are all that remain at issue.

Officer Garrison has now filed a Motion for Summary Judgment [Doc. #28]. Officer Garrison's Motion for Summary Judgment seeks the dismissal of Plaintiff's excessive force claim and battery claim arguing that the force Officer Garrison used at the time was objectively reasonable. In the alternative, Officer Garrison argues he is entitled to summary judgment as to the excessive force claim based on qualified immunity and that he is entitled to summary judgment as to the battery claim based on North Carolina's public official immunity. Plaintiff filed a response in opposition to Officer Garrison's Motion for Summary Judgment and included an affidavit, in which he provides a description of the events surrounding the attack. Officer Garrison, however, in filing his reply, argues that such affidavit contains improper assertions that are not based on Plaintiff's personal knowledge. Accordingly, Officer Garrison argues that the Court should disregard such statements in ruling on the Motion for Summary Judgment.

II. STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Zahodnick v. Int'l Bus. Machs. Corp.</u>, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the

4

burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. It is not the judge's function "to weigh the evidence and determine the truth of the matter[,]" but instead, it is "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson v, 477 U.S. at 248-49.

III.     DISCUSSION

    A.     Plaintiff's Affidavit

Initially, the Court will address Officer Garrison's argument concerning the Plaintiff's affidavit attached to Plaintiff's Response to the Motion for Summary Judgment. Officer Garrison argues that the Court must strike the following statements from Plaintiff's affidavit because Officer Garrison alleges that such statements were not made based on personal knowledge:

5

- "There was no one else at the abandoned house or underneath it to my personal knowledge." (Plaintiff Aff. [Doc. #32-1], at ¶ 14.)
- ". . . which was visible to the officers." (Id., at ¶ 19.)
- "It was clear to me that I was immediately visible to the officers where I was crouching." (Id., at ¶ 20.)
- "Following the initial bite, Garrison saw me and could see my features and skin color." (Id., at ¶ 22.)
- ". . . despite being able to see that I was not the suspect in the robbery." (Id., at ¶ 24.)
- "During this entire time and the time preceding it I was visible to Officer Garrison." (Id., at ¶ 27.)
- "At no point did the officers continue to search the bushes or house for any other individual." (Id., ¶ 29.)

An "affidavit . . . used to . . . oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). When an "affidavit contains both inadmissible and admissible portions courts are free to strike only the inadmissible portions." Morrison v. Jordan, No. 7:08–CV–00643, 2010 WL 3783452, at *3 (W.D. Va. Sept. 28, 2010) (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (noting that summary judgment affidavits cannot be conclusory or based upon hearsay and finding that the district court acted properly when it struck portions of the plaintiff's affidavit)).

The Court finds that, after reviewing the above contested statements, such statements were not made based on personal knowledge. First, as to the statement in Paragraph 14, Plaintiff does not assert at any time that he searched for others in the house or underneath the house. At best, Plaintiff may state that he did not see anyone else underneath the house. Any statement concerning the inside of the house is completely speculative and made without personal knowledge, as Plaintiff never alleged that he entered the house. Second, in the

6

statements from Paragraphs 19, 20, 22, and 24, Plaintiff has attempted to testify as to what the officers were capable of seeing. No one other than the officers have such personal knowledge. Lastly, as to Paragraph 29, Plaintiff attempted to make a generalized statement concerning the officers' actions in relation to any search of the house, which seems to include the officers' actions while Plaintiff was not present. Plaintiff cannot have personal knowledge of what actions the officers took after Plaintiff was not at the scene of the incident. Accordingly, for those reasons, such statements will be disregarded by the Court in making any findings below concerning Officer Garrison's Motion for Summary Judgment.

B. Motion for Summary Judgment

1. § 1983 Claim for Excessive Force

Officer Garrison first argues that Plaintiff's § 1983 claim for excessive force should be dismissed because a constitutional violation did not occur. In the alternative, Officer Garrison asserts that he is entitled to qualified immunity for his actions because even if a constitutional violation did occur, it would not have been clear to a reasonable officer that Officer Garrison's conduct was unlawful at the time he confronted the situation. Accordingly, the Court will address each argument in turn.

a. Constitutional Violation

As stated above, Officer Garrison first argues that Plaintiff's § 1983 claim for excessive force in violation of the Fourth Amendment[2] should be dismissed because no constitutional

---

[2]Officer Garrsion also argues that insomuch as Plaintiff is attempting to assert a claim for the violation of his Fourteenth Amendment substantive due process rights, such claim fails as a matter of law. The Court notes that Plaintiff does assert a claim for the violation of his

7

violation occurred. Specifically, Officer Garrison argues that the force used was objectively reasonable under the circumstances. "Section 1983 provides a cause of action for constitutional deprivations arising from actions taken under color of state law." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). In determining whether the use of force was unreasonable and, therefore, whether it constitutes a constitutional violation, the Court must carefully balance the "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations and internal quotation marks omitted). In doing so, the Court looks at the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. These factors are referred to as the Graham factors. Jones v. Buchanan, 325 F.3d 520, 528 (4th Cir. 2003). The intentions of the police officer has no bearing on the reasonableness inquiry, as the reasonableness inquiry is an objective one. Graham, 490 U.S. at 397. Furthermore, the objective reasonableness of a particular incident "must be judged from the perspective of a

---

Fourteenth Amendment rights in his Complaint based on Officer Garrison's actions. (See Complaint [Doc. #1], at 11). However, as indicated by Officer Garrison, such claim is without merit. The Supreme Court has made clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (emphasis in original). Plaintiff in this action has attempted to make a claim that Officer Garrison used excessive force in the seizure of him. Therefore, the Court finds that the claim is properly analyzed under to the Fourth Amendment, rather than under the Fourteenth Amendment according to Graham.

reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" keeping in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." Id. at 396-97.

The Court finds, that after analyzing the facts presented in this particular action in the light most favorable to the Plaintiff, who is the non-moving party, it cannot be said that, as a matter of law, the force Officer Garrison used was reasonable. The first Graham factor considers the severity of the crime. The underlying crime at issue is the assault and robbery, which the Court does find is a serious crime. See United States v. Hutchinson, 149 App'x 214, 216 (4th Cir. 2005) (finding that a common law robbery conviction in North Carolina qualifies as a violent felony for purposes of 18 U.S.C. § 924(e)(1)). Plaintiff, however, was not the perpetrator of the crime. During the initial attack involving the injury to Plaintiff's head, it may not have been clear to Officer Garrison that Plaintiff was not the suspect. Accordingly, for purposes of Plaintiff's initial injury this factor may weigh in favor of Officer Garrison. Officer Garrison, however, admits that it became clear after the initial attack that Plaintiff was indeed not the suspect described by witnesses. Yet, Officer Garrison did not remove the K-9 from Plaintiff at that time, but instead chose to require Plaintiff to show his hands to the officers prior to the removal of the K-9. During the time between the initial bite and Plaintiff showing the officers his hands, the K-9 bit Plaintiff two additional times. Therefore, there was no crime at issue associated with Plaintiff which can be considered in conjunction with these two additional bites. Accordingly, while this factor may weigh in Officer Garrison's favor as to the initial bite when Plaintiff may have been mistaken for the suspect, it does not weigh in his favor as to the

9

remaining attack during which Plaintiff was not suspected of any crime.

The fact that after the initial bite the officers could no longer consider Plaintiff a suspect of the crime is also an issue as to the remaining two Graham factors. Those factors are whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest through flight. A robbery and assault suspect could pose a threat to the officers, and the actual suspect was actively evading arrest. Plaintiff, however, was not the actual suspect of the robbery and assault. Thus, the Court cannot definitively state that the extra force used after the initial bite, when it became clear to Officer Garrison that Plaintiff was not the suspect, was reasonable after analyzing these factors. During that time, Officer Garrison had little reason to suspect Plaintiff of being a threat or to suspect him of fleeing from any crime. Officer Garrison's contention that hiding from police is not normal bystander conduct does not provide a sufficient basis to weigh these factors in Officer Garrison's favor.

Officer Garrison cites to cases in which various courts found that the use of a police K-9 in effectuating an arrest did not violate the suspect's Fourth Amendment rights, as the courts found such use to be reasonable under the circumstances. Both cases[3] cited by Officer Garrison, however, are distinguishable from the facts at issue in this action. First, in Tarantino

---

[3]Officer Garrison also cites Melgar ex rel. Melgar v. Greene, 593 F.2d 348 (4th Cir. 2010) in support of his argument that a constitutional violation did not occur. In Melgar, however, the Fourth Circuit did not make a finding concerning whether the officer's conduct constituted excessive force. 593 F.3d at 356. Instead, the Fourth Circuit rested its finding for the officer on the basis of the second prong of the qualified immunity analysis, finding that the officer did not violate clearly established law. Id. at 359-60.

10

v. Dupnik, No. CV-09-00606-TUC-FRZ, 2012 WL 1718893 (D. Ariz. May 15, 2012) the district court addressed a situation where a K-9 was released to track a suspect, but instead bit a homeless man that was sleeping in the area. In that situation, the officer had warned that he was releasing the K-9 and upon realizing that the K-9 may have found a homeless person's campsite called the dog off. Tarantino, 2012 WL 1718893, at *5. In this case, however, Officer Garrison did not immediately call the K-9 off Plaintiff when he realized Plaintiff was not the suspect of the robbery and assault. Second, in Jones v. Wild, 244 Fed. App'x 532 (4th Cir. 2007) (unpublished), the other case cited by Officer Garrison, the officers were attempting to arrest and gain control over the actual suspect of the crime at issue when the officers deployed the K-9. This was not the situation at issue in this action, as Plaintiff was not the actual suspect of the crime, and after the initial bite, Officer Garrison was aware of that fact.

The case relied upon by Plaintiff, while also distinguishable from the facts at issue, does provide somewhat better guidance on whether the force used in this instance was excessive. In Kopf v. Wing, the Fourth Circuit stated that "a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites [him.]" 942 F.2d 265, at 269 (4th Cir. 1991). In Kopf, the suspect was attacked by a police K-9 that the officer had released from its lead and where there was a dispute concerning whether a warning was provided to the suspect prior to such release. Nevertheless, Kopf did involve a situation where prior to removing the K-9, the officer was attempting to require the suspect to put his hands up, like the situation in this case. Furthermore, while the facts surrounding the event in this action are dissimilar, the dissimilar facts strengthen Plaintiff's case because unlike the

11

suspect in Kopf, Plaintiff was not the actual suspect of the crime and Officer Garrison had additional control over his K-9 because the K-9 in this action was still on its lead. Accordingly, the Court finds that both the Graham factors and the case law do not support a finding that as a matter of law Officer Garrison's use of force was reasonable under the circumstances.

        b.        Qualified Immunity

Officer Garrison next argues that even if a constitutional violation did occur, it would not have been clear to Officer Garrison at the time of the incident that his conduct was unlawful. Thus, Officer Garrison asserts that based on this argument he is entitled to qualified immunity. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Washington v. Wilmore, 407 F.3d 274, 281 (4th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In determining whether a governmental official is entitled to qualified immunity, the Court must decide "whether a constitutional violation occurred and . . . whether the right violated was clearly established." Melgar, 593 F.3d at 353.

As the Court determined above that it cannot say that as a matter of law the force Officer Garrison used did not constitute a constitutional violation, the Court will examine the second prong of qualified immunity, which is whether the officer's conduct violated a clearly established right. A right is clearly established if at the time of the alleged violation "it would be clear to an objectively reasonable officer that his conduct violated that right." Brown v. Gilmore, 278 F.3d

12

362, 367 (4th Cir. 2002). "Thus officers will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper." Melgar, 593 F.3d at 357. Prior guidance does not mean that a decision directly on point is required to put the officers on notice of the established right. Id. at 358. Instead, the decision must be sufficiently clear so as to allow a reasonable officer to understand that his actions violate the right. Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3036-37, 97 L. Ed. 2d 523 (1987)).

The Court finds that Officer Garrison's actions did not violate a clearly established right. In arguing that a clearly established right exists to be free from the alleged excessive force in this action, Plaintiff first cites Kopf mentioned above. This case, however, does not provide the guidance necessary to find that a reasonable officer, in Officer Garrison's position would have known that his conduct violated a clearly established right. As stated above, the Fourth Circuit only found that a jury may conclude that forcing a person to show his hands prior to calling off the police K-9 is excessive force, but the Fourth Circuit did not state definitively that such conduct did in fact amount to a constitutional violation. Kopf, 593 F.3d at 268. Furthermore, the Court notes that in making such a statement, the Fourth Circuit was also dealing with a completely different set of facts which involved a longer K-9 attack and additional injuries inflicted by the officers themselves. In Officer Garrison's situation, however, the entire incident lasted for, at most, 10 seconds and was in the context of a rapidly evolving situation that required Officer Garrison to make a split-second decision on how to react to finding a person hidden under the abandoned house, which the officers believed housed the suspect of the

13

robbery and assault.

Plaintiff also attempts to argue that Kopf is similar because Officer Garrison did not provide warning prior to releasing his K-9 like the officer in Kopf. Plaintiff also cites Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. 1998) for the same proposition. Such an assertion, however, is without merit because Officer Garrison never actually released his K-9. Instead, Officer Garrison kept his K-9 on the lead at all times and during the attack the K-9 was on a short three foot lead. There is no case law requiring that officer's announce the presence of their K-9. Instead, warning is only needed prior to the release of the K-9. See Vathekan, 154 F.3d at 179 (finding "that failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context."). Accordingly, neither Kopf nor Vathekan are directly on point or sufficiently similar for the Court to find that a clearly established right to be free from the alleged excessive force at issue existed at the time of Officer Garrison's actions. Therefore, the Court finds that Officer Garrison is entitled to summary judgment as to Plaintiff's excessive force claim on the basis of second prong of the qualified immunity analysis.

    2.    Battery Claim

Officer Garrison next argues that Plaintiff's battery claim under North Carolina state law must be dismissed because the use of force was reasonable. "A civil action for damages for assault and battery is available . . . against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Thomas v. Sellers, 542 S.E. 2d 283, 287 (N.C. Ct. App. 2001). Officer Garrison argues that because the force used was not excessive, he is entitled to summary judgment on Plaintiff's state

14

law battery claim. As stated above, however, the Court cannot find that the force used by Officer Garrison was in fact reasonable as a matter of law. Accordingly, the Court cannot grant summary judgment as to Plaintiff's battery claim based on Officer Garrison's reasonableness argument.

Officer Garrison argues that even if the Court rejects the argument that the force Officer Garrison used was reasonable, however, Officer Garrison is nonetheless, entitled to summary judgment as to Plaintiff's state law battery claim based on public official immunity. Under North Carolina state law, police officers are entitled to public official immunity unless the officer's actions were "malicious, corrupt, or outside the scope of his official authority." Thomas, 542 S.E. 2d at 286 (quotation and citation omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (quoting Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E. 2d 888, 890 (1984)). Accordingly, "public officers' immunity, at the least, is unavailable to officers who violate clearly established rights because an officer acts with malice when he 'does that which a man of reasonable intelligence would have known to be contrary to his duty.' " Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003) (quoting Grad v. Kaasa, 312 N.C. 310, 321 S.E.2d 888, 890 (1984)); Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013).

Officer Garrison argues that there is no evidence of malice, because Officer Garrison only acted to ensure the safety of him and his fellow officer. Plaintiff argues, however, that public official immunity is not available in actions where Plaintiff pleads intentional torts such

15

as battery. Many courts have made the general statement that in cases where intentional torts are alleged, public official immunity in North Carolina is unavailable. See Hawkins v. State, 453 S.E. 2d 233, 242 (N.C. Ct. App. 1995) ("Because malice encompasses intent, we conclude that if a party alleges an intentional tort claim, the doctrine of qualified immunity does not immunize public officials or public employees from suit in their individual capacities."); see also Wells v. North Carolina Dept. Of Correction, 567 S.E. 2d 803, 813 (N.C. Ct. App. 2002) ("However, if the plaintiff alleges an intentional tort claim, a determination is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity."); see also Bradley v. Ramsey, 329 F. Supp. 2d 617, 626 (W.D.N.C. 2004) (stating that public official immunity is not a defense to intentional torts in North Carolina); see also Mandsager v. Univ. Of North Carolina at Greensboro, 269 F. Supp. 2d. 662, 681 (M.D.N.C. 2003) (stating that public official immunity is not a defense to intentional torts). Nonetheless, many courts have also granted summary judgment as to assault and battery claims based on public official immunity, despite the fact that such claims are intentional torts. See Ayala v. Wolfe, 546 Fed. App'x 197, 202 (4th Cir. 2013) (affirming the district court's dismissal of plaintiff's state law claims including battery and intentional infliction of emotional distress pursuant to North Carolina's public official immunity law); see also Campbell v. Anderson, 576 S.E. 2d 726, 730 (N.C. Ct. App. 2003) (finding that North Carolina's public official immunity law applied to the plaintiff's claims for malicious prosecution, trespass, and false arrest); see also DeBaun v. Kuszaj, 749 S.E. 2d 110 (N.C. Ct. App. 2013) (finding that summary judgment was properly granted as to the plaintiff's claims for excessive force and assault and battery pursuant

to North Carolina's public official immunity law); Lowder v. Payne, 739 S.E.2d 627 (N.C. Ct. App. 2013) (explicitly rejecting the contention that public official immunity does not shield an official from liability for intentional torts). Accordingly, the Court finds that these cases seem to be in conflict, because while some have said that the defense does not apply to all intentional torts, others have applied the defense to the intentional torts of battery and assault.

The Court, however, finds that the decisions more in line with North Carolina law on public official immunity are those that apply the immunity to the intentional tort of battery. As stated above, public official immunity is available unless the officer's actions were either (1) malicious, (2) corrupt, or (3) outside the scope of his official authority." Thomas, 542 S.E.2d at 286. Hawkins, the North Carolina Court of Appeals case most commonly cited for the proposition that immunity does not apply to actions involving intentional torts, makes such finding because the court states that "malice encompasses intent." 453 S.E. 2d at 242. This, however, is not always true for all intentional torts. For instance, the North Carolina Court of Appeals has found that battery, specifically, "need not necessarily be perpetrated with malice, willfulness or wantonness." Lynn v. Burnette, 531 S.E. 2d 275, 279 (N.C. Ct. App. 2000) (citing Myrick v. Cooley, 371 S.E.2d 492, 496 (N.C. Ct. App. 1988). Instead, the intent required for a battery claim "may be supplied by grossly or culpably negligent conduct." Id. (citations omitted); see also Jenkins v. Averett, 424 F.2d 1228, 1231 (4th Cir. 1970) (finding that the correct statement of the rule is that gross or culpable negligence may supply the intent for an assault and battery). Accordingly, the Court finds that, rather than making the general statement that all intentional torts include the element of malice and are therefore not subject to dismissal

17

pursuant to the public immunity doctrine, the correct approach is on a tort by tort basis.

Thus, because the intentional tort for battery does not have to encompass malice, the Court must analyze the facts of this particular case to determine whether Plaintiff has alleged sufficient facts to establish that Officer Garrison acted with malice in committing the alleged battery. After analyzing the available facts, the Court finds that Plaintiff has failed to provide evidence that Officer Garrison was acting with a malicious intent to injure Plaintiff. Officer Garrison testified in his deposition that the reason he did not pull his K-9 off prior to Plaintiff showing his hands was specifically to ensure the safety of himself and the other officer present during the incident. Plaintiff was unable to present any other evidence showing a different intent on the part of the Officer. Furthermore, the entire encounter including the first sudden bite lasted at most 10 seconds according to both parties. This evidence does not support a finding that Officer Garrison acted with any malicious intent. Plaintiff failed to show that any of Officer Garrison's actions were done with an intent to injure him, and as a result the Court finds that Officer Garrison is entitled to public official immunity under North Carolina state law. Accordingly, Plaintiff's state law claims for battery against Officer Garrison must be dismissed.

IV. CONCLUSION

In sum, for the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment [Doc. #28] based on a finding of both qualified immunity and public official immunity.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED and this matter is hereby DISMISSED. A Judgment consistent with this

Memorandum Opinion and Order will be filed contemporaneously herewith.

This the 17th day of November, 2014.

／s／ James A. Beaty  
United States District Judge